Stephen M. Lobbin
sml@smlavvocati.com
SML AVVOCATI P.C.
969 Hilgard Avenue, Suite 1012
Los Angeles, California 90024
(949) 636-1391 (Phone)

*Counsel for Plaintiff Scanning Technologies Innovations, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

**SCANNING TECHNOLOGIES INNOVATIONS, LLC,**
Plaintiff,

v.

**THE DATAMAX SOFTWARE GROUP, INC. d/b/a RFGEN SOFTWARE,**
Defendant.

**Case No. 2:26-at-01920**

**Jury Trial Demanded**

## COMPLAINT FOR PATENT INFRINGEMENT
## DEMAND FOR JURY TRIAL

Plaintiff Scanning Technologies Innovations, LLC ("Plaintiff" or "STI") files this Complaint against The DataMAX Software Group, Inc. d/b/a RFgen Software ("DataMAX" or "Defendant"), for infringement of United States Patent Nos. 8,469,270, 9,053,498, 9,466,078, 9,934,528, 10,600,101, and 12,380,473, and alleges as follows:

## PARTIES

1. Plaintiff is a Florida limited liability company with a principal place of business at 1 E. Broward Blvd., Ste. 700, Ft. Lauderdale, FL 33301.

2. On information and belief, Defendant is a corporation organized and existing under the laws of the State of California, with its principal place of business at 1101 Investment Boulevard, Suite 250, El Dorado Hills, California 95762, which is located within this District. Defendant does business under the name "RFgen Software," and identifies itself in its published terms of service as

"DataMAX Software Group, Inc, a California corporation dba RFgen Software." *See* https://www.rfgen.com/wp-content/uploads/2024/04/RFgen-Terms-of-Service.pdf. Defendant may be served through its registered agent, Robert W. Brice, 3701 Claire Drive, Carmichael, California 95608.

## JURISDICTION AND VENUE

3. This action arises under the patent laws of the United States, 35 U.S.C. § 271 *et seq.* Plaintiff is seeking damages, as well as attorney fees and costs.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (Federal Question) and 1338(a) (Patents).

5. This Court has personal jurisdiction over Defendant. Defendant is incorporated under the laws of the State of California and maintains its principal place of business within this District. Defendant has continuous and systematic business contacts with the State of California and with this District. Further, this Court has personal jurisdiction over Defendant based on its commission of one or more acts of infringement of STI's patents in this District and elsewhere in the State of California.

6. Defendant directly conducts business extensively throughout the State of California and within this District by making, using, distributing, offering for sale, selling, and advertising its products and services, including the Accused Instrumentalities identified below. Defendant has purposefully and voluntarily made its products and services, including the infringing systems, available to residents of this District and placed them into the stream of commerce with the intention and expectation that they will be purchased and/or used by consumers in this District.

7. On information and belief, Defendant maintains a regular and established place of business within this District, including its corporate headquarters and principal place of business at 1101 Investment Boulevard, Suite 250, El Dorado Hills, California, where Defendant designs, develops, and tests the Accused Instrumentalities. Defendant retains employees within this District and generates substantial revenues from its business activities in this District.

8. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)–(c) and 1400(b). Defendant resides in this District within the meaning of § 1400(b) because it is incorporated under the laws of the State of California and maintains its principal place of business in this District. *See In re*

*BigCommerce, Inc.*, 890 F.3d 978 (Fed. Cir. 2018). In addition, Defendant has committed acts of infringement in this District and has a regular and established place of business in this District.

9. Defendant's principal place of business is located in El Dorado County. Pursuant to Local Rule 120(d), this action is properly commenced in the United States District Court sitting in Sacramento, California.

**THE PATENTS-IN-SUIT**

10. Plaintiff is the sole and exclusive owner, by assignment, of United States Patent No. 8,469,270 (hereinafter "the '270 Patent"), United States Patent No. 9,053,498 (hereinafter "the '498 Patent"), United States Patent No. 9,466,078 (hereinafter "the '078 Patent"), United States Patent No. 9,934,528 (hereinafter "the '528 Patent"), United States Patent No. 10,600,101 (hereinafter "the '101 Patent"), and United States Patent No. 12,380,473 (hereinafter "the '473 Patent"). The '270, '498, '078, '528, '101 and '473 Patents are collectively referred to herein as the "Asserted Patents."

11. The '270 Patent issued on June 25, 2013 from U.S. Patent Application Serial No. 13/405,246, filed February 25, 2012. Application Serial No. 13/922,888, filed June 20, 2013, is a continuation of Application Serial No. 13/405,246. The '498 Patent issued on June 9, 2015 from Application Serial No. 14/294,800, filed June 3, 2014, which is a continuation of Application Serial No. 13/922,888. The '078 Patent issued on October 11, 2016 from Application Serial No. 14/731,817, filed June 5, 2015, which is a continuation of Application Serial No. 14/294,800. The '528 Patent issued on April 3, 2018 from Application Serial No. 15/267,594, filed September 16, 2016, which is a continuation of Application Serial No. 14/731,817. The '101 Patent issued on March 24, 2020 from Application Serial No. 15/944,522, filed April 3, 2018, which is a continuation of Application Serial No. 15/267,594. The '473 Patent issued on August 5, 2025 from Application Serial No. 19/069,914, filed March 4, 2025, which is a continuation of Application Serial No. 18/828,562, which is a continuation of Application Serial No. 16/828,432, which is a continuation of Application Serial No. 15/944,522. Each of the Asserted Patents therefore descends through a common chain of continuations from Application Serial No. 13/405,246, filed February 25, 2012, and the Asserted Patents share a common specification. Unless otherwise noted, citations herein to that common specification are to the '270 Patent.

12. The ’270 Patent is attached as Exhibit A, the ’498 Patent is attached as Exhibit B, the ’078 Patent is attached as Exhibit C, the ’528 Patent is attached as Exhibit D, the ’101 Patent is attached as Exhibit E, and the ’473 Patent, together with its Certificate of Correction issued October 7, 2025, is attached as Exhibit F.

13. The Asserted Patents are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

14. Plaintiff possesses all rights of recovery under the Asserted Patents, including the exclusive right to recover for past, present and future infringement.

15. The ’270 Patent contains twenty-eight claims including three independent claims (claims 1, 13, and 19) and twenty-five dependent claims.

16. The ’498 Patent contains twenty claims including three independent claims (claims 1, 9, and 14) and seventeen dependent claims.

17. The ’078 Patent contains sixteen claims including three independent claims (claims 1, 7, and 12) and thirteen dependent claims.

18. The ’528 Patent contains twenty-one claims including four independent claims (claims 1, 7, 12, and 17) and seventeen dependent claims.

19. The ’101 Patent contains twenty-one claims including four independent claims (claims 1, 7, 12, and 17) and seventeen dependent claims.

20. The ’473 Patent contains four claims including one independent claim (claim 1) and three dependent claims.

21. The priority date of the Asserted Patents is at least as early as February 25, 2012. As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

22. Plaintiff alleges infringement on the part of Defendant of the Asserted Patents.

**<u>THE ASSERTED PATENTS CLAIM PATENT-ELIGIBLE SUBJECT MATTER</u>**

23. As noted, the claims of the Asserted Patents have a priority date at least as early as February 25, 2012. The inventions as claimed solve problems existing in the art as of the date of invention that are rooted in mobile computing and network technology. Thus, the claims of the

Asserted Patents focus on specific improvements in the capabilities of mobile devices. Specifically, as of the date of invention, a mobile device could learn whether information about a scanned article of commerce was available only by establishing a connection to a remote server over a wireless network and querying that server. As the common specification explains, such devices "take time to connect to the Internet (if Internet service is even available) and then the user still may or may not have information on the article of commerce." '270 Patent at 1:44–46.

24. The difficulty was structural and not merely one of user convenience. Because the determination of whether information existed resided on a remote server, every scan required a network connection and a round trip to that server before the mobile device could tell the user anything, including that no information existed at all. The inventions as claimed solve that problem by relocating the availability determination to the mobile device: a look-up table that associates product codes with information link indicators is maintained in a server database and made available to the mobile device, so that the device can determine "if product information is available for a particular article of commerce, via a visual or audible indication on the mobile device, without access to the communication network." '270 Patent at Abstract; *see also id.* at 4:27–30 ("With the look-up table(s) stored in local memory on the user's mobile device, the user may access the information on the table at any time without the need to continually access information from the server.").

25. The claims of the Asserted Patents overcome these deficiencies in computer technology existing in the art as of the date of invention, and comprise non-conventional, novel, technical improvements embodied in the claims that transform the inventions as claimed into substantially more than mere abstract ideas.

26. Each of the Asserted Patents claims a specific machine, a specific method carried out by particular components of identified machines, or a computer readable medium containing instructions that direct those components, and not an abstract idea. Across the Asserted Patents, the claims recite variations of the same concrete architecture: a server database stores a look-up table that associates a plurality of product codes with a plurality of information link indicators, each configured as a status signal indicating the existence or absence of a link to information about the corresponding article of commerce; the look-up table is made available to the mobile device, and in many claims is

downloaded to and stored in a local database associated with the mobile device; the mobile device's scanner or visual input device captures and decodes the code on an article of commerce; and the mobile device looks up the decoded code in the look-up table to determine, from the respective information link indicator, whether information about the article is accessible via the communication network.

27. The asserted method claims therefore recite an ordered combination of operations that must occur in a particular sequence in order to achieve the claimed result. The look-up table must first be downloaded from the server database; the code must then be scanned or captured and decoded; and only then is the decoded code looked up in the downloaded table to determine, from the corresponding information link indicator, whether information is accessible. It is the ordered combination, and not any single operation viewed in isolation, that eliminates the network round trip described in the common specification.

28. Every asserted claim of every one of the Asserted Patents requires that each information link indicator be "configured as a status signal indicating the existence or absence of a link to information pertaining to a respective article of commerce." That requirement is not a field-of-use limitation or an insignificant post-solution embellishment. It is the data structure that permits the availability determination to be made on the mobile device rather than on the remote server.

29. Many of the asserted claims further require that the downloading and storing of the look-up table be performed when the mobile device is not being used for voice communication. That limitation specifies when the mobile device's communication interface is used to acquire the look-up table, and has no analog in any mental process or pen-and-paper practice.

30. The hardware elements recited in the system claims of the Asserted Patents are not recited at a level of generality that would permit them to be characterized as generic computer components performing their ordinary and expected functions. In claim 1 of the '270 Patent and claim 1 of the '498 Patent, for example, each element is claimed in a specific structural and functional relationship to the others: the visual input device is affixed within the portable handheld housing of the mobile device and supplies the decoded code to the signal processing device; the local database holds the look-up table downloaded from the server database; and the signal processing device makes

the availability determination from the information link indicator stored in that table. The claimed advance resides in that arrangement.

31. Claim 17 of the ’528 Patent claims a non-transitory computer readable medium containing instructions that, when executed by a processor, perform the claimed steps. The claim is directed to a specific machine-readable article that configures a mobile device to perform the ordered combination of operations described above, not to information in the abstract.

32. Claim 1 of the ’473 Patent, as corrected, likewise claims a non-transitory computer readable medium containing instructions that cause a processor within a mobile device to reference the look-up table of bar codes and information link indicators from the server database, receive and decode a quanta of information to obtain a bar code, look up the bar code in the look-up table to determine from the respective information link indicator whether information pertaining to the article of commerce is accessible via the communication network, and signal the user as to the status of that information. The information link indicator again supplies the specific data structure by which the mobile device determines whether such information exists, and the claim is directed to a specific machine-readable article rather than to information in the abstract.

33. The claims of the Asserted Patents are not drawn to laws of nature, natural phenomena, or abstract ideas. The specific combinations of elements, as recited in the claims, were not conventional or routine at the time of the invention.

34. The improvements disclosed in the Asserted Patents and the feature recitations in the claims of the Asserted Patents are not those that would be well-understood, routine, or conventional to one of ordinary skill in the art at the time of the invention.

35. Whether the combinations of elements recited in the claims of the Asserted Patents were well-understood, routine, and conventional to a person of ordinary skill in the art as of the priority date is a question of fact. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018); *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). The allegations set forth above place that question in dispute and preclude its resolution against Plaintiff on the pleadings.

36. The ’270 Patent was examined by Primary United States Patent Examiner Michael G.

Lee and Assistant Examiner Laura Gudorf. During the examination of the ’270 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: USPC 235/375, 235/379, 235/383, 235/385, 235/462.01–462.49; 705/26.1–26.8, 705/28, 705/346.

37. After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the ’270 Patent to issue. In so doing, it is presumed that Examiner Lee used his knowledge of the art when examining the claims. *K/S Himpp v. Hear-Wear Techs., LLC*, 751 F.3d 1362, 1369 (Fed. Cir. 2014). It is further presumed that Examiner Lee had experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill. *In re Sang Su Lee*, 277 F.3d 1338, 1345 (Fed. Cir. 2002). In view of the foregoing, the claims of the ’270 Patent are novel and non-obvious, including over all non-cited art which is merely cumulative with the referenced and cited prior art. Likewise, the claims of the ’270 Patent are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by Examiner Lee.

38. The claims of the ’270 Patent were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration. *See, e.g.*, *Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.*, 655 F.3d 1291, 1299 (Fed. Cir. 2011) (“[A]n expired patent is not viewed as having ‘never existed.’ Much to the contrary, a patent does have value beyond its expiration date. For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286”) (internal citations omitted).

39. The claims of the ’270 Patent expired on June 25, 2025.

40. The ’498 Patent was examined by Primary United States Patent Examiner Michael G. Lee and Assistant Examiner Laura Gudorf. During the examination of the ’498 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: USPC 235/375, 235/379, 235/385, 235/462.01–462.49; 705/26.1–26.8, 705/28, 705/346.

41. After giving full proper credit to the prior art and having conducted a thorough search

for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the ’498 Patent to issue. In so doing, it is presumed that Examiner Lee used his knowledge of the art when examining the claims. *K/S Himpp v. Hear-Wear Techs., LLC*, 751 F.3d 1362, 1369 (Fed. Cir. 2014). It is further presumed that Examiner Lee had experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill. *In re Sang Su Lee*, 277 F.3d 1338, 1345 (Fed. Cir. 2002). In view of the foregoing, the claims of the ’498 Patent are novel and non-obvious, including over all non-cited art which is merely cumulative with the referenced and cited prior art. Likewise, the claims of the ’498 Patent are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by Examiner Lee.

42. The claims of the ’498 Patent were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration. *See, e.g.*, *Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.*, 655 F.3d 1291, 1299 (Fed. Cir. 2011) (“[A]n expired patent is not viewed as having ‘never existed.’ Much to the contrary, a patent does have value beyond its expiration date. For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286”) (internal citations omitted).

43. The claims of the ’498 Patent expired on July 17, 2023.

44. The ’078 Patent was examined by Primary United States Patent Examiner Laura Gudorf. During the examination of the ’078 Patent, the United States Patent Examiner searched for prior art in the following classifications: CPC G06Q 30/0281, G06Q 30/0251, G06Q 30/02, G06F 17/2235, G06F 17/30699, G06F 17/30879; USPC 235/385.

45. After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the ’078 Patent to issue. In so doing, it is presumed that Examiner Gudorf used her knowledge of the art when examining the claims. *K/S Himpp v. Hear-Wear Techs., LLC*, 751 F.3d 1362, 1369 (Fed. Cir. 2014). It is further presumed that Examiner Gudorf

had experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill. *In re Sang Su Lee*, 277 F.3d 1338, 1345 (Fed. Cir. 2002). In view of the foregoing, the claims of the ’078 Patent are novel and non-obvious, including over all non-cited art which is merely cumulative with the referenced and cited prior art. Likewise, the claims of the ’078 Patent are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by Examiner Gudorf.

46. The claims of the ’078 Patent were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration. *See, e.g.*, *Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.*, 655 F.3d 1291, 1299 (Fed. Cir. 2011) (“[A]n expired patent is not viewed as having ‘never existed.’ Much to the contrary, a patent does have value beyond its expiration date. For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286”) (internal citations omitted).

47. The nominal expiration date for the claims of the ’078 Patent is February 25, 2032.

48. The ’528 Patent was examined by Primary United States Patent Examiner Laura Gudorf. During the examination of the ’528 Patent, the United States Patent Examiner searched for prior art in the following classifications: CPC G06F 17/30699, G06F 17/2235, G06F 17/30879, G06Q 30/02, G06Q 30/0251, G06Q 30/0281.

49. After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the ’528 Patent to issue. In so doing, it is presumed that Examiner Gudorf used her knowledge of the art when examining the claims. *K/S Himpp v. Hear-Wear Techs., LLC*, 751 F.3d 1362, 1369 (Fed. Cir. 2014). It is further presumed that Examiner Gudorf had experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill. *In re Sang Su Lee*, 277 F.3d 1338, 1345 (Fed. Cir. 2002). In view of the foregoing, the claims of the ’528 Patent are novel and non-obvious, including over all non-cited art which is merely cumulative with the referenced and cited prior art. Likewise, the claims of the ’528

Patent are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by Examiner Gudorf.

50. The claims of the ’528 Patent were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration. *See, e.g.*, *Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.*, 655 F.3d 1291, 1299 (Fed. Cir. 2011) (“[A]n expired patent is not viewed as having ‘never existed.’ Much to the contrary, a patent does have value beyond its expiration date. For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286”) (internal citations omitted).

51. The claims of the ’528 Patent expired on May 11, 2026.

52. The ’101 Patent was examined by Primary United States Patent Examiner Laura A. Gudorf. During the examination of the ’101 Patent, the United States Patent Examiner searched for prior art in the following classifications: CPC G06Q 30/0623, G06Q 30/02, G06Q 30/0251, G06Q 30/0277, G06Q 30/0281, G06F 16/22, G06F 16/9558, G06F 16/335, G06F 16/951, G06F 3/167, G06F 17/2235, H04L 67/02.

53. After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the ’101 Patent to issue. In so doing, it is presumed that Examiner Gudorf used her knowledge of the art when examining the claims. *K/S Himpp v. Hear-Wear Techs., LLC*, 751 F.3d 1362, 1369 (Fed. Cir. 2014). It is further presumed that Examiner Gudorf had experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill. *In re Sang Su Lee*, 277 F.3d 1338, 1345 (Fed. Cir. 2002). In view of the foregoing, the claims of the ’101 Patent are novel and non-obvious, including over all non-cited art which is merely cumulative with the referenced and cited prior art. Likewise, the claims of the ’101 Patent are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by Examiner Gudorf.

54. The claims of the '101 Patent were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration. *See, e.g.*, *Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.*, 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent is not viewed as having 'never existed.' Much to the contrary, a patent does have value beyond its expiration date. For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

55. The nominal expiration date for the claims of the '101 Patent is February 25, 2032.

56. The '473 Patent was examined by Primary United States Patent Examiner Laura A. Gudorf. During the examination of the '473 Patent, the United States Patent Examiner searched for prior art in the following classifications: CPC G06Q 30/0281, G06Q 30/0267, G06Q 30/0623, G06Q 30/0627, G06Q 30/0643.

57. After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '473 Patent to issue. In so doing, it is presumed that Examiner Gudorf used her knowledge of the art when examining the claims. *K/S Himpp v. Hear-Wear Techs., LLC*, 751 F.3d 1362, 1369 (Fed. Cir. 2014). It is further presumed that Examiner Gudorf had experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill. *In re Sang Su Lee*, 277 F.3d 1338, 1345 (Fed. Cir. 2002). In view of the foregoing, the claims of the '473 Patent are novel and non-obvious, including over all non-cited art which is merely cumulative with the referenced and cited prior art. Likewise, the claims of the '473 Patent are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by Examiner Gudorf.

58. The claims of the '473 Patent were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration. *See, e.g.*, *Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.*, 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent

is not viewed as having 'never existed.' Much to the contrary, a patent does have value beyond its expiration date. For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

59. The nominal expiration date for the claims of the '473 Patent is February 25, 2032.

**THE ACCUSED INSTRUMENTALITIES**

60. Upon information and belief, Defendant makes, uses, sells, offers for sale, and/or otherwise provides its MobileEdge Suites of barcode-driven mobile applications; the RFgen Mobile Client application on which those applications execute, which Defendant distributes through the Apple App Store and the Google Play Store; and the RFgen Mobile Unity Platform server software with which those applications communicate (collectively, the "Accused Instrumentalities"). Defendant's customers use the Accused Instrumentalities to scan barcodes on inventory items, products, and assets in warehouse, manufacturing, shipping, and inventory operations, and to retrieve and update the corresponding records in their enterprise resource planning systems.

61. Defendant designs the Accused Instrumentalities to operate offline. Defendant advertises that its platform allows "RFgen powered apps to run, both online and offline, regardless of operating system and device," and describes a deployment in which "[d]ata specific to the location would be extracted from SAP and delivered to the sales rep's consumer-grade mobile phone via a cellular network," after which "[o]perations would then be performed offline on the device . . . using full data validation." *See* https://www.rfgen.com/customer-center/features-available-in-rfgen-version-5-1/offline-android-and-ios-applications/. Defendant further documents the synchronization of database tables from the RFgen Mobile Unity Platform to the mobile device for offline use. *See* https://portal.rfgen.com/help/5.2/Content/RFgenStudio/Sync%20Tables.htm; https://portal.rfgen.com/help/5.2/Content/RFgenStudio/Database%20Exports.htm.

62. When a barcode is scanned using the mobile device's built-in camera, the Accused Instrumentalities decode the barcode, use the decoded value to look up the corresponding record in the database stored on the mobile device, and generate a validation result.

63. The Accused Instrumentalities also operate online. Upon information and belief, when a barcode is scanned while the mobile device is connected to the communication network, the Accused

Instrumentalities access enterprise information maintained on the RFgen Mobile Unity Platform through the communication network to determine whether information corresponding to the scanned item is available. *See* https://www.rfgen.com/customer-center/features-available-in-rfgen-version-5-1/offline-android-and-ios-applications/.

64. The Accused Instrumentalities infringe the ’270, ’498, ’078, ’528, ’101 and ’473 Patents.

**COUNT ONE**

**(Infringement of United States Patent No. 8,469,270)**

65. Plaintiff refers to and incorporates the allegations in Paragraphs 1-64, the same as if set forth herein.

66. This cause of action arises under the patent laws of the United States and, in particular under 35 U.S.C. §§ 271, *et seq.*

67. Defendant has knowledge of its infringement of the ’270 Patent, at least as of the service of the present complaint.

68. Accordingly, Defendant has infringed the ’270 Patent in violation of 35 U.S.C. § 271. Upon information and belief, prior to the expiration of the ’270 Patent, Defendant infringed one or more claims, including at least Claims 1 and 13 of the ’270 Patent, through the Accused Instrumentalities, as identified in the Claim Chart attached hereto as Exhibit G.

69. Claim 1 of the ’270 Patent is a system claim that recites both a mobile phone and a server. Upon information and belief, Defendant directly infringed Claim 1 of the ’270 Patent under 35 U.S.C. § 271(a) by making and using the claimed system, including when Defendant’s personnel combined and operated the MobileEdge Suites applications executing on the RFgen Mobile Client on a mobile phone under Defendant’s control, in communication with the RFgen Mobile Unity Platform, in the course of developing, testing, demonstrating, and supporting the Accused Instrumentalities.

70. Claim 13 of the ’270 Patent is a method claim. Upon information and belief, Defendant directly infringed Claim 13 of the ’270 Patent under 35 U.S.C. § 271(a) by itself performing each step of the claimed method, including when Defendant’s personnel operated the MobileEdge Suites applications executing on the RFgen Mobile Client, configured to operate offline using data

synchronized from the RFgen Mobile Unity Platform, in the course of developing, testing, demonstrating, and supporting the Accused Instrumentalities.

71. Defendant also has directly infringed, literally or under the doctrine of equivalents, one or more claims, including at least Claims 1 and 13 of the ’270 Patent, by having its employees internally test and use the Accused Instrumentalities.

72. Exhibit G includes at least one chart comparing the exemplary Claims 1 and 13 of the ’270 Patent to the Accused Instrumentalities. As set forth in this chart, the Accused Instrumentalities practice the technology claimed by the ’270 Patent. Accordingly, the Accused Instrumentalities incorporated in this chart satisfy all elements of exemplary Claims 1 and 13 of the ’270 Patent.

73. Plaintiff therefore incorporates by reference in its allegations herein the claim chart of Exhibit G.

74. Plaintiff is entitled to recover damages adequate to compensate for Defendant’s infringement.

75. The ’270 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

76. A copy of the ’270 Patent is attached hereto as Exhibit A.

77. By engaging in the conduct described herein, Defendant has injured Plaintiff and is liable for infringement of the ’270 Patent, pursuant to 35 U.S.C. § 271.

78. Defendant has committed these acts of literal infringement, or infringement under the doctrine of equivalents of the ’270 Patent, without license or authorization.

79. As a result of Defendant’s infringement of the ’270 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant’s past infringement, together with interests and costs.

80. Plaintiff is in compliance with 35 U.S.C. § 287.

## COUNT TWO

**(Infringement of United States Patent No. 9,053,498)**

81. Plaintiff refers to and incorporates the allegations in Paragraphs 1-80, the same as if set forth herein.

82. This cause of action arises under the patent laws of the United States and, in particular under 35 U.S.C. §§ 271, *et seq.*

83. Defendant has knowledge of its infringement of the '498 Patent, at least as of the service of the present complaint.

84. Accordingly, Defendant has infringed the '498 Patent in violation of 35 U.S.C. § 271. Upon information and belief, prior to the expiration of the '498 Patent, Defendant infringed one or more claims, including at least Claims 1 and 9 of the '498 Patent, through the Accused Instrumentalities, as identified in the Claim Chart attached hereto as Exhibit H.

85. Claim 1 of the '498 Patent is a system claim that recites both a mobile device and a server. Upon information and belief, Defendant directly infringed Claim 1 of the '498 Patent under 35 U.S.C. § 271(a) by making and using the claimed system, including when Defendant's personnel combined and operated the MobileEdge Suites applications executing on the RFgen Mobile Client on a mobile device under Defendant's control, in communication with the RFgen Mobile Unity Platform, in the course of developing, testing, demonstrating, and supporting the Accused Instrumentalities.

86. Claim 9 of the '498 Patent is a method claim. Upon information and belief, Defendant directly infringed Claim 9 of the '498 Patent under 35 U.S.C. § 271(a) by itself performing each step of the claimed method, including when Defendant's personnel operated the MobileEdge Suites applications executing on the RFgen Mobile Client, configured to operate offline using data synchronized from the RFgen Mobile Unity Platform, in the course of developing, testing, demonstrating, and supporting the Accused Instrumentalities.

87. Defendant also has directly infringed, literally or under the doctrine of equivalents, one or more claims, including at least Claims 1 and 9 of the '498 Patent, by having its employees internally test and use the Accused Instrumentalities.

88. Exhibit H includes at least one chart comparing the exemplary Claims 1 and 9 of the '498 Patent to the Accused Instrumentalities. As set forth in this chart, the Accused Instrumentalities practice the technology claimed by the '498 Patent. Accordingly, the Accused Instrumentalities incorporated in this chart satisfy all elements of exemplary Claims 1 and 9 of the '498 Patent.

89. Plaintiff therefore incorporates by reference in its allegations herein the claim chart of

Exhibit H.

90. Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement.

91. The '498 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

92. A copy of the '498 Patent is attached hereto as Exhibit B.

93. By engaging in the conduct described herein, Defendant has injured Plaintiff and is liable for infringement of the '498 Patent, pursuant to 35 U.S.C. § 271.

94. Defendant has committed these acts of literal infringement, or infringement under the doctrine of equivalents of the '498 Patent, without license or authorization.

95. As a result of Defendant's infringement of the '498 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

96. Plaintiff is in compliance with 35 U.S.C. § 287.

## COUNT THREE

**(Infringement of United States Patent No. 9,466,078)**

97. Plaintiff refers to and incorporates the allegations in Paragraphs 1-96, the same as if set forth herein.

98. This cause of action arises under the patent laws of the United States and, in particular under 35 U.S.C. §§ 271, *et seq.*

99. Defendant has knowledge of its infringement of the '078 Patent, at least as of the service of the present complaint.

100. Accordingly, Defendant has infringed and continues to infringe the '078 Patent in violation of 35 U.S.C. § 271. Upon information and belief, Defendant has infringed and continues to infringe one or more claims, including at least Claim 7 of the '078 Patent, through the Accused Instrumentalities, as identified in the Claim Chart attached hereto as Exhibit I.

101. Claim 7 of the '078 Patent is a method claim. Upon information and belief, Defendant directly infringes Claim 7 of the '078 Patent under 35 U.S.C. § 271(a) by itself performing each step

of the claimed method, including when Defendant's personnel operate the MobileEdge Suites applications executing on the RFgen Mobile Client, configured to operate offline using data synchronized from the RFgen Mobile Unity Platform, in the course of developing, testing, demonstrating, and supporting the Accused Instrumentalities.

102. Defendant also has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims, including at least Claim 7 of the '078 Patent, by having its employees internally test and use the Accused Instrumentalities.

103. Defendant has further induced, and continues to induce, infringement of the '078 Patent in violation of 35 U.S.C. § 271(b).

104. Defendant's customers directly infringe Claim 7 of the '078 Patent by performing each step of the claimed method when they install and operate the MobileEdge Suites applications executing on the RFgen Mobile Client on their own mobile devices, configured to operate offline using data synchronized from the RFgen Mobile Unity Platform, in communication with the RFgen Mobile Unity Platform.

105. Defendant knowingly causes that infringement. Defendant designed the offline operation of the Accused Instrumentalities, supplies the MobileEdge Suites applications executing on the RFgen Mobile Client, operates the RFgen Mobile Unity Platform, and instructs its customers to use the Accused Instrumentalities in the infringing manner. Defendant's published materials promote that its platform allows "RFgen powered apps to run, both online and offline, regardless of operating system and device," and describe delivering location-specific data to a customer's "consumer-grade mobile phone" so that "[o]perations would then be performed offline on the device." *See* https://www.rfgen.com/customer-center/features-available-in-rfgen-version-5-1/offline-android-and-ios-applications/. Defendant's published documentation further instructs its customers how to configure database tables for synchronization to, and export to, the mobile device. *See* https://portal.rfgen.com/help/5.2/Content/RFgenStudio/Sync%20Tables.htm; https://portal.rfgen.com/help/5.2/Content/RFgenStudio/Database%20Exports.htm.

106. Defendant has had knowledge of the '078 Patent and of its customers' infringement at least as of the service of this Complaint, and has since that date continued to supply the Accused

Instrumentalities and to instruct its customers to use them in the manner described above. Defendant therefore acts with the specific intent to encourage that infringement, or at minimum with willful blindness to it. Defendant is liable as an infringer for the infringement it induces. 35 U.S.C. § 271(b).

107. The service of this Complaint, in conjunction with the attached Claim Chart (Exhibit I) and references cited, constitutes actual knowledge of infringement as alleged here.

108. Exhibit I includes at least one chart comparing the exemplary Claim 7 of the ’078 Patent to the Accused Instrumentalities. As set forth in this chart, the Accused Instrumentalities practice the technology claimed by the ’078 Patent. Accordingly, the Accused Instrumentalities incorporated in this chart satisfy all elements of exemplary Claim 7 of the ’078 Patent.

109. Plaintiff therefore incorporates by reference in its allegations herein the claim chart of Exhibit I.

110. Plaintiff is entitled to recover damages adequate to compensate for Defendant’s infringement.

111. Defendant’s actions complained of herein will continue unless Defendant is enjoined by this Court.

112. The ’078 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

113. A copy of the ’078 Patent is attached hereto as Exhibit C.

114. By engaging in the conduct described herein, Defendant has injured Plaintiff and is liable for infringement of the ’078 Patent, pursuant to 35 U.S.C. § 271.

115. Defendant has committed these acts of literal infringement, or infringement under the doctrine of equivalents of the ’078 Patent, without license or authorization.

116. As a result of Defendant’s infringement of the ’078 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant’s past infringement, together with interests and costs.

117. Plaintiff is in compliance with 35 U.S.C. § 287.

118. As such, Plaintiff is entitled to compensation for any continuing and/or future infringement of the ’078 Patent up until the date that Defendant ceases its infringing activities.

**COUNT FOUR**

**(Infringement of United States Patent No. 9,934,528)**

119. Plaintiff refers to and incorporates the allegations in Paragraphs 1-118, the same as if set forth herein.

120. This cause of action arises under the patent laws of the United States and, in particular under 35 U.S.C. §§ 271, *et seq.*

121. Defendant has knowledge of its infringement of the ’528 Patent, at least as of the service of the present complaint.

122. Accordingly, Defendant has infringed the ’528 Patent in violation of 35 U.S.C. § 271. Upon information and belief, prior to the expiration of the ’528 Patent, Defendant infringed one or more claims, including at least Claims 7 and 17 of the ’528 Patent, through the Accused Instrumentalities, as identified in the Claim Chart attached hereto as Exhibit J.

123. Claim 7 of the ’528 Patent is a method claim. Upon information and belief, Defendant directly infringed Claim 7 of the ’528 Patent under 35 U.S.C. § 271(a) by itself performing each step of the claimed method, including when Defendant’s personnel operated the MobileEdge Suites applications executing on the RFgen Mobile Client, configured to operate offline using data synchronized from the RFgen Mobile Unity Platform, in the course of developing, testing, demonstrating, and supporting the Accused Instrumentalities.

124. Claim 17 of the ’528 Patent claims a non-transitory computer readable medium containing instructions that, when executed by a processor, perform the claimed steps. Upon information and belief, Defendant directly infringed Claim 17 of the ’528 Patent under 35 U.S.C. § 271(a) by making, using, selling, and offering to sell such a medium, including the servers and storage media on which Defendant stored the instructions comprising the MobileEdge Suites applications executing on the RFgen Mobile Client, and the copies of those instructions that Defendant made and transmitted for distribution through the Apple App Store and the Google Play Store.

125. Defendant also has directly infringed, literally or under the doctrine of equivalents, one or more claims, including at least Claims 7 and 17 of the ’528 Patent, by having its employees internally test and use the Accused Instrumentalities.

126. Exhibit J includes at least one chart comparing the exemplary Claims 7 and 17 of the ’528 Patent to the Accused Instrumentalities. As set forth in this chart, the Accused Instrumentalities practice the technology claimed by the ’528 Patent. Accordingly, the Accused Instrumentalities incorporated in this chart satisfy all elements of exemplary Claims 7 and 17 of the ’528 Patent.

127. Plaintiff therefore incorporates by reference in its allegations herein the claim chart of Exhibit J.

128. Plaintiff is entitled to recover damages adequate to compensate for Defendant’s infringement.

129. The ’528 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

130. A copy of the ’528 Patent is attached hereto as Exhibit D.

131. By engaging in the conduct described herein, Defendant has injured Plaintiff and is liable for infringement of the ’528 Patent, pursuant to 35 U.S.C. § 271.

132. Defendant has committed these acts of literal infringement, or infringement under the doctrine of equivalents of the ’528 Patent, without license or authorization.

133. As a result of Defendant’s infringement of the ’528 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant’s past infringement, together with interests and costs.

134. Plaintiff is in compliance with 35 U.S.C. § 287.

## COUNT FIVE

### (Infringement of United States Patent No. 10,600,101)

135. Plaintiff refers to and incorporates the allegations in Paragraphs 1-134, the same as if set forth herein.

136. This cause of action arises under the patent laws of the United States and, in particular under 35 U.S.C. §§ 271, *et seq.*

137. Defendant has knowledge of its infringement of the ’101 Patent, at least as of the service of the present complaint.

138. Accordingly, Defendant has infringed and continues to infringe the ’101 Patent in

violation of 35 U.S.C. § 271. Upon information and belief, Defendant has infringed and continues to infringe one or more claims, including at least Claims 1 and 7 of the ’101 Patent, through the Accused Instrumentalities, as identified in the Claim Chart attached hereto as Exhibit K.

139. Claim 1 of the ’101 Patent is a system claim that recites both a mobile device and a server. Upon information and belief, Defendant directly infringes Claim 1 of the ’101 Patent under 35 U.S.C. § 271(a) by making and using the claimed system, including when Defendant’s personnel combine and operate the MobileEdge Suites applications executing on the RFgen Mobile Client on a mobile device under Defendant’s control, in communication with the RFgen Mobile Unity Platform, in the course of developing, testing, demonstrating, and supporting the Accused Instrumentalities.

140. Claim 7 of the ’101 Patent is a method claim. Upon information and belief, Defendant directly infringes Claim 7 of the ’101 Patent under 35 U.S.C. § 271(a) by itself performing each step of the claimed method, including when Defendant’s personnel operate the MobileEdge Suites applications executing on the RFgen Mobile Client, configured to operate offline using data synchronized from the RFgen Mobile Unity Platform, in the course of developing, testing, demonstrating, and supporting the Accused Instrumentalities.

141. Defendant also has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims, including at least Claims 1 and 7 of the ’101 Patent, by having its employees internally test and use the Accused Instrumentalities.

142. Defendant has further induced, and continues to induce, infringement of the ’101 Patent in violation of 35 U.S.C. § 271(b).

143. Defendant’s customers directly infringe Claim 1 of the ’101 Patent by using the claimed system and directly infringe Claim 7 of the ’101 Patent by performing each step of the claimed method when they install and operate the MobileEdge Suites applications executing on the RFgen Mobile Client on their own mobile devices, configured to operate offline using data synchronized from the RFgen Mobile Unity Platform, in communication with the RFgen Mobile Unity Platform.

144. Defendant knowingly causes that infringement. Defendant designed the offline operation of the Accused Instrumentalities, supplies the MobileEdge Suites applications executing on the RFgen Mobile Client, operates the RFgen Mobile Unity Platform, and instructs its customers to

use the Accused Instrumentalities in the infringing manner. Defendant's published materials promote that its platform allows "RFgen powered apps to run, both online and offline, regardless of operating system and device," and describe delivering location-specific data to a customer's "consumer-grade mobile phone" so that "[o]perations would then be performed offline on the device." *See* https://www.rfgen.com/customer-center/features-available-in-rfgen-version-5-1/offline-android-and-ios-applications/. Defendant's published documentation further instructs its customers how to configure database tables for synchronization to, and export to, the mobile device. *See* https://portal.rfgen.com/help/5.2/Content/RFgenStudio/Sync%20Tables.htm; https://portal.rfgen.com/help/5.2/Content/RFgenStudio/Database%20Exports.htm.

145. Defendant has had knowledge of the '101 Patent and of its customers' infringement at least as of the service of this Complaint, and has since that date continued to supply the Accused Instrumentalities and to instruct its customers to use them in the manner described above. Defendant therefore acts with the specific intent to encourage that infringement, or at minimum with willful blindness to it. Defendant is liable as an infringer for the infringement it induces. 35 U.S.C. § 271(b).

146. The service of this Complaint, in conjunction with the attached Claim Chart (Exhibit K) and references cited, constitutes actual knowledge of infringement as alleged here.

147. Exhibit K includes at least one chart comparing the exemplary Claims 1 and 7 of the '101 Patent to the Accused Instrumentalities. As set forth in this chart, the Accused Instrumentalities practice the technology claimed by the '101 Patent. Accordingly, the Accused Instrumentalities incorporated in this chart satisfy all elements of exemplary Claims 1 and 7 of the '101 Patent.

148. Plaintiff therefore incorporates by reference in its allegations herein the claim chart of Exhibit K.

149. Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement.

150. Defendant's actions complained of herein will continue unless Defendant is enjoined by this Court.

151. The '101 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

152. A copy of the ’101 Patent is attached hereto as Exhibit E.

153. By engaging in the conduct described herein, Defendant has injured Plaintiff and is liable for infringement of the ’101 Patent, pursuant to 35 U.S.C. § 271.

154. Defendant has committed these acts of literal infringement, or infringement under the doctrine of equivalents of the ’101 Patent, without license or authorization.

155. As a result of Defendant’s infringement of the ’101 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant’s past infringement, together with interests and costs.

156. Plaintiff is in compliance with 35 U.S.C. § 287.

157. As such, Plaintiff is entitled to compensation for any continuing and/or future infringement of the ’101 Patent up until the date that Defendant ceases its infringing activities.

**COUNT SIX**

**(Infringement of United States Patent No. 12,380,473)**

158. Plaintiff refers to and incorporates the allegations in Paragraphs 1-157, the same as if set forth herein.

159. This cause of action arises under the patent laws of the United States and, in particular under 35 U.S.C. §§ 271, *et seq.*

160. The ’473 Patent issued on August 5, 2025. On October 7, 2025, the United States Patent and Trademark Office issued a Certificate of Correction for the ’473 Patent correcting claim 1 by cancelling the word “without” at column 12, line 30. A copy of the Certificate of Correction is included with the ’473 Patent at Exhibit F. A certificate of correction has “the same effect and operation in law on the trial of actions for causes thereafter arising as if the same had been originally issued in such corrected form.” 35 U.S.C. § 254; *see also* 35 U.S.C. § 255. Plaintiff accordingly asserts claim 1 of the ’473 Patent, as corrected, for infringement occurring on and after October 7, 2025. *See Sw. Software, Inc. v. Harlequin Inc.*, 226 F.3d 1280 (Fed. Cir. 2000).

161. Defendant has knowledge of its infringement of the ’473 Patent, at least as of the service of the present complaint.

162. Accordingly, Defendant has infringed and continues to infringe the ’473 Patent in

violation of 35 U.S.C. § 271. Upon information and belief, on and after October 7, 2025, Defendant has infringed and continues to infringe one or more claims, including at least Claim 1 of the ’473 Patent, through the Accused Instrumentalities, as identified in the Claim Chart attached hereto as Exhibit L.

163. Claim 1 of the ’473 Patent claims a non-transitory computer readable medium containing instructions that, when executed by a processor contained within a mobile device, perform the claimed steps. Upon information and belief, Defendant directly infringes Claim 1 of the ’473 Patent under 35 U.S.C. § 271(a) by making, using, selling, and offering to sell such a medium, including the servers and storage media on which Defendant stores the instructions comprising the MobileEdge Suites applications executing on the RFgen Mobile Client, and the copies of those instructions that Defendant makes and transmits for distribution through the Apple App Store and the Google Play Store.

164. Upon information and belief, Defendant further directly infringes Claim 1 of the ’473 Patent under 35 U.S.C. § 271(a) by using the claimed medium, including when Defendant’s personnel execute the instructions of the MobileEdge Suites applications executing on the RFgen Mobile Client on mobile devices under Defendant’s control, while connected to the communication network and the RFgen Mobile Unity Platform, in the course of developing, testing, demonstrating, and supporting the Accused Instrumentalities.

165. Defendant also has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims, including at least Claim 1 of the ’473 Patent, by having its employees internally test and use the Accused Instrumentalities.

166. Defendant has further induced, and continues to induce, infringement of the ’473 Patent in violation of 35 U.S.C. § 271(b).

167. Defendant’s customers directly infringe Claim 1 of the ’473 Patent by using the claimed medium when they install the MobileEdge Suites applications executing on the RFgen Mobile Client on their own mobile devices and execute its instructions to scan barcodes while connected to the communication network and the RFgen Mobile Unity Platform, in communication with the RFgen Mobile Unity Platform.

168. Defendant knowingly causes that infringement. Defendant designed the online operation of the Accused Instrumentalities, supplies the MobileEdge Suites applications executing on the RFgen Mobile Client, operates the RFgen Mobile Unity Platform, and instructs its customers to use the Accused Instrumentalities in the infringing manner. Defendant's published materials promote that its platform allows "RFgen powered apps to run, both online and offline, regardless of operating system and device," and Defendant's published documentation instructs its customers how to install and use the RFgen Mobile Client. *See* https://www.rfgen.com/customer-center/features-available-in-rfgen-version-5-1/offline-android-and-ios-applications/; https://portal.rfgen.com/help/5.2/Content/ClientInstallGuide/Using%20the%20Mobile%20Client.htm.

169. Defendant has had knowledge of the '473 Patent and of its customers' infringement at least as of the service of this Complaint, and has since that date continued to supply the Accused Instrumentalities and to instruct its customers to use them in the manner described above. Defendant therefore acts with the specific intent to encourage that infringement, or at minimum with willful blindness to it. Defendant is liable as an infringer for the infringement it induces. 35 U.S.C. § 271(b).

170. The service of this Complaint, in conjunction with the attached Claim Chart (Exhibit L) and references cited, constitutes actual knowledge of infringement as alleged here.

171. Exhibit L includes at least one chart comparing the exemplary Claim 1 of the '473 Patent to the Accused Instrumentalities. As set forth in this chart, the Accused Instrumentalities practice the technology claimed by the '473 Patent. Accordingly, the Accused Instrumentalities incorporated in this chart satisfy all elements of exemplary Claim 1 of the '473 Patent.

172. Plaintiff therefore incorporates by reference in its allegations herein the claim chart of Exhibit L.

173. Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement.

174. Defendant's actions complained of herein will continue unless Defendant is enjoined by this Court.

175. The '473 Patent is valid, enforceable, and was duly issued in full compliance with Title

35 of the United States Code.

176. A copy of the ’473 Patent, together with its Certificate of Correction, is attached hereto as Exhibit F.

177. By engaging in the conduct described herein, Defendant has injured Plaintiff and is liable for infringement of the ’473 Patent, pursuant to 35 U.S.C. § 271.

178. Defendant has committed these acts of literal infringement, or infringement under the doctrine of equivalents of the ’473 Patent, without license or authorization.

179. As a result of Defendant’s infringement of the ’473 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant’s past infringement, together with interests and costs.

180. Plaintiff is in compliance with 35 U.S.C. § 287.

181. As such, Plaintiff is entitled to compensation for any continuing and/or future infringement of the ’473 Patent up until the date that Defendant ceases its infringing activities.

## DEMAND FOR JURY TRIAL

182. STI, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the Court to:

(a) Enter judgment for Plaintiff on this Complaint on all causes of action asserted herein;

(b) Enter an Order enjoining Defendant, its agents, officers, servants, employees, attorneys, and all persons in active concert or participation with Defendant who receive notice of the order from further infringement of United States Patent Nos. 9,466,078, 10,600,101, and 12,380,473 (or, in the alternative, awarding Plaintiff a running royalty from the time of judgment going forward);

(c) Award Plaintiff damages resulting from Defendant’s infringement in accordance with 35 U.S.C. § 284;

(d) Declare this an exceptional case and award Plaintiff its reasonable attorney fees pursuant to 35 U.S.C. § 285;

(e) Award Plaintiff pre-judgment and post-judgment interest and costs; and

(f) Award Plaintiff such further relief to which the Court finds Plaintiff entitled under law or equity.

Dated: October 19, 2026

Respectfully submitted,

*<u>/s/ Stephen M. Lobbin</u>*
Stephen M. Lobbin
sml@smlavvocati.com
**SML AVVOCATI P.C.**
969 Hilgard Avenue, Suite 1012
Los Angeles, California 90024
Phone: (949) 636-1391

René A. Vazquez
*Pro Hac Vice anticipated*
DNL Zito
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Phone: (703) 989-2244
rvazquez@dnlzito.com

**Counsel for Plaintiff**